## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

―――――――――

**Trustees of the New Mexico Pipe Trades Health
& Welfare Trust Fund; Trustees of the New
Mexico Pipe Trades Joint Apprenticeship Trust
Fund; Trustees of the New Mexico Pipe Trades
Pension Plan B Trust Fund; Trustees of the
Plumbers & Pipefitters National Pension Plan;
Trustees of the International Training Trust
Fund, and Build New Mexico,**

      Plaintiffs,

      v.                                                    Civ. No. 11-1065 BB-WDS

**Mares Plumbing & Mechanical, Inc., a New
Mexico Corporation,**

      Defendant.

### MEMORANDUM OPINION

      This case involves a dispute over a plumbing company's obligation to make monthly

fringe benefit payments to a number of trust funds pursuant to a collective bargaining agreement.

Plaintiffs consist of the Board of Trustees of the New Mexico Pipe Trades Health & Welfare

Trust Fund, the New Mexico Pipe Trades Joint Apprenticeship Trust Fund, the New Mexico Pipe

Trades Pension Trust Fund Plan B, the Plumbers and Pipefitters National Pension Plan, the

International Training Fund, and Build New Mexico (respectively the "Trustees" and the "Trust

Funds"). The Defendant is Mares Plumbing and Mechanical, Inc. ("Mares Plumbing").

      The Trustees commenced this action, alleging that Mares Plumbing failed to make

contributions to a number of the Trust Funds pursuant to a collective bargaining agreement

("CBA") entered into by the parties on March 31, 2006. The Trustees also allege that Mares

Plumbing failed to file monthly payroll reports as required by the CBA. This conduct, the

Trustees allege, violates section 502(g)(2)(B) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(g)(2)(B) ("ERISA").  Accordingly, pursuant to ERISA § 502(g)(2)(B), the Trustees seek all unpaid monthly fringe benefit contributions, plus interest, liquidated damages, and attorney's fees and costs, for the period of March 1, 2011 through September 30, 2011.  The Trustees also seek injunctive relief to ensure prompt payment of fringe benefit contributions.

In its Answer, Mares Plumbing raises the affirmative defenses of estoppel and laches "to all claims."  Mares Plumbing also asserts state law counterclaims against the Trustees for intentional interference with business relations, interference with prospective business relations, defamation, fraud, and violation of New Mexico's Unfair Practices Act.  Mares Plumbing seeks treble damages and demands a jury trial on all issues so triable.

The Trustees have filed the following motions with this Court: (1) a motion for dismissal of the affirmative defenses, (2) a motion for dismissal of the counterclaims, (3) a motion to strike the fraud counterclaim, (4) a motion to strike the jury demand, (5) a motion to strike or dismiss the answer as untimely, and (6) a motion to strike or dismiss Mark Mares as immaterial, and (7) a motion to strike or dismiss any claim of Mark Mares as preempted by ERISA.  Doc. 11.  At the same time, Mares Plumbing has filed a motion to join Mark Mares as a necessary party.  Doc. 17.

## I. Facts and Procedure

The Court derives the following facts from the Amended Complaint and Answer, *see generally* Docs. 7 & 9, and presumes them to be true for the sake of the present motions.  *See Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *Amoco Prod. Co. v. Aspen Group*, 25 F. Supp. 2d 1162, 1164 (D. Colo. 1998) (a court must presume that the cross-complainant's factual allegations are true and construe them in a light most favorable to him).

2

The Plaintiffs are trustees of five multiemployer-employee benefit trust funds that are subject to ERISA, along with one labor-management cooperation committee trust fund.  The Trustees are each sponsored by a joint board of trustees, half of whom are appointed by a labor organization, either the United Association of Plumbers and Pipefitters or by its Local Union 412 ("Local 412"), and half of whom are appointed by various employers or employer organizations, including the Mechanical Contractors Association of New Mexico, Inc. ("MCA").  Neither Local 412 nor MCA are parties to this lawsuit.

Under ERISA, the Trustees have a fiduciary duty to "act to ensure that [the] plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries."  *Central States, Se. & Sw. Areas Pension Fund v. Central Transp., Inc.,* 472 U.S. 559, 571 (1985); *Holdeman v. Devine,* 572 F.3d 1190, 1193 (10th Cir. 2009).  Accordingly, the Trustees filed an action in this Court to collect the delinquent contributions owed by Mares Plumbing.  The Amended Complaint states that Mares Plumbing signed a collective bargaining agreement ("CBA") with Local 412 in 2006.  Pursuant to the CBA, Mares Plumbing was obligated to file timely payroll reports on the fourteenth day of each month, make monthly fringe benefit contributions on all employees to the Trust Funds, and comply with the terms of the Agreements and Declarations of Trust of the Trust Funds.  The CBA was effective from April 1, 2006 through March 31, 2010.  It also contained a clause, often known as an "evergreen clause," explicitly providing that the agreement continued from year to year unless terminated in a specific manner and by a specific date.

As alleged in the Amended Complaint, Mares Plumbing failed to make fringe benefits payments to the Trust Funds from March through September 2011.  To determine the amount of these delinquent fringe benefit payments, the Trust Funds ordered a target audit of Mares

3

Plumbing.  The audit revealed a delinquency of $12,755.40 plus late fees.  The Trust Funds informed Mares Plumbing of this overdue amount, but received no payments.  Thus, the Trustees sent delinquency notices of demand to Mares Plumbing's clients.  The notices were made pursuant to the Miller Act, 40 U.S.C. § 3131 *et seq.*, and the Little Miller Act, NMSA 1978 § 13-4-10 *et seq.*  The notices requested that the sums owed to Mares Plumbing be paid to the Trustees.  The Trustees also filed the instant action to collect the delinquent contributions under section 515 of ERISA, 29 U.S.C. § 1145.

In its Answer, Mares Plumbing argues that there was no valid CBA in place because it terminated by its own terms on March 31, 2010.  Indeed, according to Mares Plumbing, Daniel Beavers, the Local 412 representative, confirmed that the CBA expired at the end of March 2010.  From April to June 2010, Beavers and Mares Plumbing attempted to negotiate a new collective bargaining agreement.  The parties, however, failed to reach a new agreement.  Hence, Mares Plumbing claims that no valid CBA was in place from April 2010 onwards; thus, it had no obligation to pay the monthly contributions or submit monthly payroll reports.  Based on these facts, Mares Plumbing raises the affirmative defenses of Laches and Estoppel.

Mares Plumbing also asserts counterclaims for intentional interference with business relations, interference with prospective business relations, defamation, and violation of New Mexico's Unfair Practices Act.  These claims are based on the delinquency notices sent by the Trustees to Mares Plumbing's clients.  Finally, Mark Mares, the owner of the company, asserts that the Trustees fraudulently terminated his health insurance in December of 2011.  Allegedly, the insurance was terminated due to Mares Plumbing's dispute with Local 412.  There is a pending motion to join Mark Mares as a necessary party.

4

## II. Standard of Review

In determining whether a counterclaim should be dismissed, the Court applies the same standards that are applied when considering a motion to dismiss a complaint for failure to state a claim on which relief may be granted.  *See Ramada Franchise Sys., Inc. v. Tresprop, Ltd.*,75 F. Supp. 2d 1205, 1208-09 (D. Kan. 1999); Fed. R. Civ. P. 12(b)(6).  Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006); *Hous. Auth. of Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.*; *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss.") (quoting *Twombly*, 550 U.S. at 570).

Here, Mares Plumbing attached several exhibits to its response to the motion to dismiss. *See* Doc. 14, Exs.1-5.  It claims the exhibits support the factual allegations set forth in its state law counterclaims and thus urges the Court to consider the exhibits by converting the motion to dismiss into one for summary judgment.  A district court, however, is not required to consider evidence attached to a motion to dismiss, even if the evidence is relevant to the claims or counterclaims.  *See Geras v. Int'l Bus. Mach. Corp.*, 638 F.3d 1311 (10th Cir. 2011); *see also Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) ("courts have broad discretion in determining whether or not to accept materials beyond the pleadings").  The Trustees' motion to dismiss is based on a question of law, namely whether ERISA preempts Mares Plumbing's affirmative defenses and counterclaims.  To resolve this legal issue, the Court need not consider the exhibits submitted by Mares Plumbing, exhibits which relate to the merits of the case.  Thus, the Court will not convert the instant motion to dismiss to a motion for summary judgment.

### III. Analysis

#### A. Section 515 of ERISA Bars the Affirmative Defenses

The Trustees move to dismiss the affirmative defenses of laches and estoppel on the basis that they are preempted by section 515 of ERISA, 29 U.S.C. § 1145.

Section 515 provides the Trustees with a cause of action to enforce the contribution requirements found in the CBA.  As the Eighth Circuit has explained, Congress added section 515 to ERISA to "simplify actions to collect delinquent contributions, avoid costly litigation, and enhance the actuarial planning necessary to the administration of multiemployer pension plans." *Central States, S.E. & S.W. Areas Pension Fund v. Independent Fruit & Produce Co.*, 919 F.2d 1343, 1348 (8th Cir. 1990); *see also Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990).  To ensure the efficacious collection of delinquent contributions, the circuit

6

courts have strictly limited the defenses available to employers sued for delinquent contributions. *Tr. of Colo. Tile, Marble & Terrazzo Workers Pension Fund v. Wilkinson & Co., Inc.,* 1998 WL 43172, at *4 (10th Cir. 1998) (noting that the circuits generally recognize only two defenses to a collection action: "the pension contributions themselves are illegal or the collective bargaining agreement is void and not merely voidable").

The Tenth Circuit has not, however, categorically stated that the defenses of laches and estoppel are unavailable in a section 515 collection action. By contrast, some federal courts have held that equitable estoppel and a handful of other equitable defenses may be applicable in actions seeking to recover delinquent trust fund contributions. *See, e.g.*, *Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Ready Mix*, 283 F.3d 877, 883 (7th Cir. 2002); *Audit Servs., Inc. v. Rolfson*, 641 F.2d 757, 762 (9th Cir. 1981); *Iron Workers' Local No. 25 Pension Fund v. Klassic Servs., Inc.*, 913 F. Supp. 541, 545–546 (E.D. Mich.1996); *Williams v. Salt City Painting, Inc.*, 1992 WL 265944, at *12 (N.D.N.Y. Oct. 1, 1992). Importantly though, where courts have permitted equitable defenses in collection actions, they have narrowly limited such defenses to circumstances involving "the actions of the fund itself in asserting its rights." *Massachusetts Laborers' Health & Welfare Fund v. Explosives Eng'g, Inc.*, 136 F.R.D. 24, 28 (D. Mass.1991) (quotations omitted); *Gorman Bros.*, 283 F.3d at 883 (focusing on conduct of multiemployer trust fund); *Audit Services*, 641 F.2d at 762 (focusing on whether trustees intended to mislead employer). This focus on the fund's actions squares with the "unanimous" views of the Third, Sixth, Ninth, Tenth, Eleventh and D.C. Circuits that the trustees of a multiemployer plan are "entitled to enforce the writing [of a collective bargaining agreement] without regard to understandings or defenses applicable to the original parties." *Cent. States, Southeast and*

7

*Southwest Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1149 n. 1 (7th

Cir.1989) (en banc) ("*Gerber Truck*").

The fundamental problem here is that Mares Plumbing fails to articulate any actions

undertaken by the Trustees that might provide the basis for a laches or estoppel defense.  Mares

Plumbing alleges that Local 412's designated representative Beavers explained to Mark Mares

that the CBA expired on April 1, 2011.  Based on this comment and the conduct of Local 412,

Mares Plumbing appears to argue that the Trustees are estopped or otherwise barred by laches

from enforcing the CBA.   This argument, however, is unavailable in the instant collection action

for the simple reason that it involves the conduct of Local 412 and its representative Beavers, not

the conduct of the Trustees.  *See Gerber Truck*, 870 F.2d at 1153 ("If the employer simply points

to a defect in formation – such as fraud in the inducement, oral promises to disregard the text, or

the lack of majority support for the union and the consequent ineffectiveness of the pact under

labor law – it must still keep its promise to the pension plans.").  Thus, the Court will grant the

motion to dismiss the affirmative defenses.

## B.  Dismissal of Counterclaims as Preempted

ERISA provides a uniform regulatory regime over employee-benefit plans and includes

expansive preemption provisions which are intended to ensure that employee-benefit-plan

regulation would be "exclusively a federal concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200,

208 (2004) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).  Here, the

Trustees assert that Mares Plumbing's counterclaims, along with Mark Mares' individual fraud

claim, are preempted by sections 502(a)(3) and 514 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1144.

Because the Trustees rely on both complete preemption under section 502 and conflict

preemption under section 514 as a basis for dismissing the counterclaims, the Court will begin

with a brief review of these two doctrines before turning to the Trustees' arguments.  *See Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1153 (10th Cir. 2004) (noting "the distinction between 'conflict preemption' under § 514 of ERISA and 'complete preemption' under § 502 of ERISA").

     **1. Complete Preemption:** The complete-preemption doctrine arises out of the enforcement scheme created by section 502 of ERISA, 29 U.S.C. § 1132.  In short, "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."  *Aetna*, 542 U.S. at 210.  To state this standard makes it clear that complete preemption only applies to claims brought under section 502(a) "by a participant or beneficiary" of an ERISA-regulated plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B); *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1221-22 (10th Cir. 2011).

     **2. Express Preemption:** In addition to complete preemption, section 514 of ERISA, 29 U.S.C. § 1144, contains an express-preemption provision stating that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" that ERISA covers.  29 U.S.C. § 1144(a).  "The key to § 514(a) is found in the words 'relate to.' Congress used those words in their broad sense, rejecting more limited pre-emption language . . . ."  *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990).  The Court has thus given the words their "broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'"  *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985).  "But at the same time, [the Supreme Court has] recognized that the term 'relate to' cannot be taken 'to extend to the

furthest stretch of its indeterminacy,' or else 'for all practical purposes pre-emption would never

run its course.' " *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001) (quoting *New York State*

*Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)).

    **3. Mares Plumbing's Counterclaims:** The Trustees assert that Mares Plumbing's

counterclaims are completely preempted by section 502 of ERISA and/or expressly preempted by

section 514 of ERISA.  To begin, Mares Plumbing, as an employer, is not "a participant or

beneficiary" of the CBA.  *See* 29 U.S.C. 1002(7)-(8) (defining "participant" and "beneficiary").

It thus has no standing to assert a claim under section 502(a).  *See Chastain v. AT & T*, 558 F.3d

1177, 1181 (10th Cir. 2009) (in a section 502(a)(1)(B) case, "only plaintiffs who are properly

considered 'participants' or 'beneficiaries' have standing to sue").  Accordingly, section 502(a)

does not apply to completely preempt Mares Plumbing's state law counterclaims.  *See, e.g.*,

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S.

1, 27 (1983) (declining to hold a claim by a state government against an ERISA-regulated plan

completely preempted because a state government was not a "participant or beneficiary" under

ERISA).

    The issue then, is whether Mares Plumbing's counterclaims are expressly preempted

under section 514 of ERISA.  There is no dispute here that the counterclaims are based on state

law and that the CBA is an employee benefit plan. The sole issue then is whether the

counterclaims "relate to" the CBA.  On this point, "[t]here is no simple test for determining when

a law 'relates to' a plan." *National Elevator Indus., Inc. v. Calhoon*, 957 F.2d 1555, 1558 (10th

Cir. 1992).  To provide some guidance, the Tenth Circuit has identified four types of laws which

"relate to" the management of an ERISA plan and are therefore preempted:

> First, laws that regulate the type of benefits or terms of ERISA plans.  Second, laws
> that create reporting, disclosure, funding, or vesting requirements for ERISA plans.
> Third, laws that provide rules for the calculation of the amount of benefits to be paid
> under ERISA plans.  Fourth, laws and common-law rules that provide remedies for
> misconduct growing out of the administration of the ERISA plan.

*Pacificare of Okla., Inc. v. Burrage*, 59 F.3d 151, 154 (10th Cir. 1995) (quotations omitted).

The Tenth Circuit has, however, emphasized that ERISA preemption is not "unlimited."  *Airparts*

*Co., Inc. v. Custom Ben. Servs. of Austin, Inc.*, 28 F.3d 1062, 1065 (10th Cir. 1994).  "What

triggers ERISA preemption is not just any indirect effect on administrative procedures but rather

an effect on the primary administrative functions of benefit plans, such as determining an

employee's eligibility for a benefit and the amount of that benefit."  *Monarch Cement Co. v.*

*Lone Star Indus., Inc.*, 982 F.2d 1448, 1452 (10th Cir. 1992).

Based on an examination of all four counterclaims, the Court determines that they relate

to the CBA and thus are preempted under section 514.  First, the counterclaims all allege

misconduct on the part of the Trustees in the administration of the CBA.  As noted previously,

the Trustees have a fiduciary duty to enforce the CBA and collect delinquent contributions.

*Holdeman*, 572 F.3d at 1193.  They attempted to do so by sending delinquent-contribution

notices to Mares Plumbing's clients.  Now, Mares Plumbing asserts claims for intentional

interference with business relations, interference with prospective business relations and

defamation on the grounds that the Trustees improperly enforced the CBA.  Doc. 9, ¶ 47, 54, 60.

Similarly, the counterclaim for violation of the New Mexico Unfair Business Act is based on an

allegation that the Trustees deceptively collected delinquent contributions from Mares

Plumbing's business partners.  *Id.* at ¶ 74.  These claims thus seek "remedies for misconduct

growing out of the administration of the ERISA plan [,]" by the Trustees, strongly suggesting that

they relate to the administration of the CBA.  *Burrage*, 59 F.3d at 154.

11

What is more, all four counterclaims concern relationships between principal ERISA participants. To determine whether a state law claim relates to an ERISA plan, courts consider, among other factors, whether the claim affects the relations among principal ERISA entities. *See Arkansas Blue Cross and Blue Shield v. St. Mary's Hosp. Inc.*, 947 F.2d 1341, 1344–45 (8th Cir. 1991); *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 990 (10th Cir. 1999) (claims that do not affect the "relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries and the beneficiaries" are not preempted). The principal ERISA entities are "the employer, the plan, the plan fiduciaries, and the beneficiaries." *St. Mary's*, 947 F.2d at 1346. Here, the counterclaims involve the relations between the plan fiduciaries – the Trustees – and the employer – Mares Plumbing – thereby confirming the Court's conclusion that the counterclaims relate to the CBA.

Finally, all the counterclaims involve a determination regarding the existence of the CBA on a factual basis. The Supreme Court has held that ERISA preempts a state law claim when the interpretation of benefit plans forms an essential part of the claim, and liability under state law only exists because of the defendant's administration of ERISA-regulated benefit plans. *Aetna*, 542 U.S. at 213. The Tenth Circuit echoed this point in *Settles v. Golden Rule Insurance Co.*, 927 F.2d 505, 509 (10th Cir. 1991), holding that common law tort and breach of contract claims were preempted by ERISA where "the factual basis of the cause of action involve[d] an employee benefit plan." *Id.* So too here, all four counterclaims turn on whether the CBA was valid at the time the Trustees sent delinquency notices to Mares Plumbing's clients. Indeed, Mares Plumbing's sole argument is that there was no valid CBA in place due to the statements by the Local 412 representative Beavers. Resolving these counterclaims would therefore require an

interpretation of the CBA and, in particular, the evergreen clause.  Because the factual basis of the counterclaims is the CBA, they are preempted.

For these reasons, it cannot be said that the counterclaims are only tangentially involved with the CBA.  *See Hospice of Metro Denver, Inc. v. Group Health Ins., Inc.*, 944 F.2d 752, 754 (10th Cir. 1991) ("ERISA does not preempt claims that are only tangentially involved with a benefit plan.").  Rather, all four counterclaims squarely allege misconduct in the administration of the CBA by the Trustees, thereby turning on an interpretation of the CBA.  The Court therefore concludes that the counterclaims relate to the CBA, and thus are preempted under section 514 of ERISA.

**4. Mark Mares' Counterclaim:** In addition to the state law counterclaims asserted by Mares Plumbing, Mark Mares asserts a common law claim against the Trustees alleging the fraudulent denial of his health insurance benefits.  The Trustees set forth a number of reasons for dismissing the fraud claim, including the fact that (i) Mares is not a party to the action, (ii) the fraud claim is preempted under section 502 or 514 of ERISA, (iii) the fraud claim is not pleaded with particularity, (iv) there are no plausible facts supporting the claim, and (v) insofar as the claim could be brought under section 502(a), Mares has failed to exhaust his administrative remedies.

Whether Mark Mares is a necessary party and should be joined in this case turns on the question of whether his counterclaim survives the Trustees' motion to dismiss.  For at least two reasons, the counterclaim does not survive the motion to dismiss.  First, the fraud counterclaim is completely preempted because it could have been brought under ERISA's remedial scheme.  Indeed, Mark Mares himself argues that his fraud claim can be sustained under section 502(a)(3) since it involves a suit by the participant to recover benefits due under the terms of the plan.

13

Doc. 14, pp. 9-10.  It is therefore completely preempted.  *See Aetna*, 542 U.S. at 210; *Hansen*, 641 F.3d at 1221-22.

Second, even assuming Mares could bring the fraud claim under ERISA, the claim must still be dismissed for failure to state a claim.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In the Answer, Mares claims that he was a member of Local 412 and received health care benefits through the union.  He further claims that his insurance was canceled "in retaliation for the dispute with Local Union 412."  Doc. 9, ¶ 43.  Even though Mares claims that Local 412 terminated his health insurance, Local 412 is not a party to this suit – it is a separate entity from the Trustees.  This reveals a fundamental flaw in the Answer: there are no allegations connecting the Trustees to the cancellation of Mares' health benefits by Local 412.  The counterclaim thus fails to meet the facial plausibility standard set forth in *Ashcroft*, 556 U.S. at 678.  For these two reasons, the Court will dismiss the fraud counterclaim.  As a result, Mark Mares is not a proper party to this delinquent contribution action between the Trustees and Mares Plumbing.  The Court therefore denies the motion to join Mark Mares.

## C. Jury Claim

The Trustees move the Court to strike Mares Plumbing's demand for a jury trial.  In response, Mares Plumbing asserts that it has a right to a jury trial on its state law counterclaims.  As noted above, however, the Court dismissed Mares Plumbing's counterclaims.  No right to a

jury trial attaches to the remaining ERISA claims. *Adams v. Cyprus Amax Minerals Co.*, 149 F.3d 1156, 1162 (10th Cir. 1998).[1]  Accordingly, the Court will strike the jury demand.

### D. Untimely Answer

There is no doubt that Mares Plumbing's Answer was untimely filed.  Mares Plumbing accepted service of process on January 10, 2012, making its answer due no later than January 31, 2012. *See* Fed. R. Civ. P. 12(a)(1)(A)(i).  Despite this firm deadline, Mares Plumbing filed its Answer on February 10, 2012, a full ten days late.  The Trustees now move to strike the Answer on the grounds that Mares Plumbing failed to request an extension for good cause or demonstrate excusable neglect.[2]

Under rule 6(b) of the Federal Rules of Civil Procedure, the Court has broad discretion to enlarge time to permit a defendant to file an answer if justice so requires.  *See* Fed. R. Civ. P. 6(b).  Specifically, rule 6(b)(1)(B) provides that the court, for good cause, may extend the time "on motion made after the time has expired if the party failed to act because of excusable neglect."  Here, the expiration of the period originally prescribed occurred.  Procedurally then, Mares Plumbing should have filed a request to extend the time frame for filing its answer.  It did not.  Instead, it simply filed an untimely answer.  Arguably then, the parameters of Rule 6(b) do not allow the court to excuse the defendant's actions: quite simply, no motion was ever made to extend the deadline as required by rule 6(b)(1)(B).  Nevertheless, the Court will treat Mares

---

[1] What is more, Mares Plumbing waived its right to request a jury trial on the Trustees' ERISA claims by failing to file a written demand within 14 days of receipt of the Amended Complaint.  *See* Fed. R. Civ. P. 39(a)(1); *Chirstenson v. Diversified Builders Inc.*, 331 F.2d 992, 994 (10th Cir. 1964).

[2] The Trustees did not move for an entry of default judgment under Fed. R. Civ. P. 55(a).

Plumbing's response to the motion to dismiss as a request to extend the time period for filing the answer based on excusable neglect.

Factors relevant to determining whether Mares Plumbing has shown excusable neglect include: (1) the danger of prejudice to the opposing party, (2) the length of delay caused by the neglect and its impact on judicial proceedings, (3) the reason for delay and whether it was in the reasonable control of the moving party, and (4) the existence of good faith on the part of the moving party. *U.S. v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004). Excusable neglect may encompass delays caused by inadvertence, by mistake, or by carelessness, at least where the delay is not long, where there is no bad faith, and where there is no prejudice to the opposing party; the movant's excuse must also have some merit. *See LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995) (*citing Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 392 (1993)). In applying these factors, the Court keeps in mind that the Federal Rules of Civil Procedure are designed to facilitate decisions on the merits rather than on pleading technicalities. *Foman v. Davis*, 371 U.S. 178, 181 (1962).

First, the Court finds no danger of prejudice to the Trustees. While the Trustees argue that they had prepared a notice of default, affidavit as to sum certain, and praecipe, they never filed any of these documents. Accordingly, it is difficult to conclude that Mares Plumbing's untimely answer prejudices the Trustees, other than by requiring them to proceed with the litigation. *See Jetcraft Corp. v. Banpais, S.A. de C.V.*, 166 F.R.D. 483, 486 (D. Kan. 1996).

Second, the ten-day delay in this case had little impact on the proceedings. The case is still in the preliminary stages and there is no basis to conclude that the untimely Answer will require any additional discovery. In similar circumstances, courts have excused far greater delays, including a delay approaching six months. *See, e.g.*, *Crutcher v. Coleman*, 205 F.R.D.

16

581, 586 (D. Kan. 1991).  That being said, though, small delays can add up, especially when a party engages in a course of conduct that includes late filings and a brazen disregard for strict time lines.  *See Jennings v. Rivers*, 394 F.3d 850, 857 (10th Cir. 2005) ("courts may "take into account whether the mistake was a single unintentional incident (as opposed to a pattern of deliberate dilatoriness and delay) and whether the attorney attempted to correct his action promptly after discovery of the mistake").  The Court thus strongly cautions counsel for Mares Plumbing against any further delays, even short delays, in filings before this Court.

The third factor regarding fault in the delay "remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable," thereby making this case a difficult one.  *City of Chanute, Kan. v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994) (citations omitted).  It would appear that the untimely Answer was the product of carelessness or inadvertence on the part of Mares Plumbing's counsel.  The Supreme Court, construing the bankruptcy counterpart to Fed.R.Civ.P. 6(b)(2), has noted that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the party's control."  *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993).  While Mares Plumbing's carelessness could be a basis for excusable neglect, it has failed to present the Court with any arguments on this point.  There is, however, no evidence of bad faith – the fourth factor in the analysis.

Considering all four of these factors, the Court will exercise its discretion and permit the Answer based on excusable neglect.

**Conclusion**

For the foregoing reasons, the Court grants the motion to dismiss the affirmative defenses and counterclaims.  The Court denies the motion to join Mark Mares.

Dated this 18th day of June, 2012.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

18